## WINANS *vs.* WINANS.

1. If a purchaser of land represent to the vendor that a certain mortgage is an encumbrance on the land, when it is known to him, but not to the vendor, that the mortgage was not, as to him, an encumbrance, and pays, on that account, so much less for the lands, this is a fraud on the vendor, and such purchaser will be compelled to pay to the vendor that amount, with interest.

2. Facts set up in an answer, as a justification of a misrepresentation admitted to be untrue, must be proved by the defendant; the burthen of proof lies upon him.

The complainant, Susan S. Winans, alleges that she sold and conveyed to the defendant, on the 15th day of April, 1856, a lot of land containing sixteen acres, situate near Elizabeth, in the county of Union; that the value of this land, as understood and fixed between the parties, was $1700; that the defendant represented to her that it was encumbered by two mortgages, one to D. C. Stiles, for $700, and one to Abigail Watkins, for $400, and that, ignorant of the facts, she conveyed the lands to him for $600, he agreeing to assume and pay those encumbrances; that she sometime afterwards discovered that these alleged encumbrances had no existence as against her; that she was the widow of Jacob Winans, a brother of the defendant, to whom she was married some time in 1853, and who died in 1855; that she had, during her marriage, lived with her husband, in the city of Washington, away from his family connections, who

lived near Elizabeth City; that Aaron Winans, the father of her husband, died in February, 1853; that, at his death, a dispute about his will arose among his four sons, which was settled by an agreement made and executed between them and their mother in that month, before probate of his will, and again confirmed and more particularly arranged by another article executed under their hands and seals, dated February 23d, 1854, which articles are set forth in the bill; that, by these agreements, the defendant, in consideration of the conveyance of a twenty-two acre lot and a twelve acre meadow lot by Jacob to him, agreed to pay Jacob $300 to assume and pay the Stiles mortgage, so as to have the sixteen acre lot in question, which was devised to Jacob, free of encumbrance, and also to pay the one fourth of the debts of the testator, which Jacob was bound to pay by virtue of a provision in the will that each of his sons should pay one fourth of any excess of his debts, legacies, and testamentary expenses, above his personal estate.

The complainant alleges that this mortgage, having been assumed by the defendant, was not an encumbrance on this lot as between the defendant and herself, to whom it had been devised by the will of her husband, and that the representation by him at the sale, that there was such an encumbrance, was a fraud upon her. She also alleges, that there was no mortgage upon this lot to Abigail Watkins for $400, or any other sum. She states that she was ignorant of the settlement and agreement between her husband and his brothers, but that she had an impression that the mortgages on the sixteen acre lot had been assumed by the defendant, and were to be paid by him; that she inquired of him during the negotiations if that was not so, and it was denied by him.

The defendant, in his answer, denies that he represented to the complainant that there was a mortgage on the lot to Abigail Watkins, or any mortgage, except the mortgage to Stiles. He states that the claim of Mrs. Watkins was for a life annuity of $24 a year, secured to her in consideration of her releasing to Jacob a life estate in lands that had been

T*

devised to him by her husband, for which she had the joint bond of Jacob and his father, Aaron Winans; that this was not secured by a mortgage, and although it was the debt of Jacob, for which his father was only security, yet, that the testator in his life, and the defendant since his death, out of kindness, had paid it for Jacob, without calling on him to re-pay, as he was poor.

The answer alleges that Jacob, who was, with his mother, the executor of his father's will, had taken and appropriated to himself all the personal estate of his father, paying few or no debts; that he had, as executor, in his hands $1800 unaccounted for, of which one half, or $900, was due to the defendant, as he had assumed and paid one half of the debts of the testator, when he was bound to pay only one half after the personal estate was appropriated to such payment. The answer states, that these facts were fully explained to the complainant, and how it was that he insisted that the Stiles mortgage was an encumbrance on the sixteen acre lot, notwithstanding said agreements between the brothers.

The defendant denies that $1700 was fixed or agreed upon as the value of the sixteen acre lot, but says: " if that sum was mentioned, it was with the explanation that with the encumbrance of $800, held by David Stiles, and the $600 he was to pay, together with the amounts due from his brother Jacob, as executor, he was paying at least that amount for the property, which was true." And he admits that his brother, Edward, did make out a statement of it, and made it $1700.

The cause was argued upon final hearing, upon the pleadings and proofs.

*Mr. Magie*, for complainant.

*Mr. Williamson*, for defendant.

THE CHANCELLOR.

The fact material to the complainant's title to relief is, that the defendant represented to her that the land was subject to two mortgages of $700 and $400, respectively, and that he paid $1100 less for the land, in consequence of these representations, than she would have otherwise required.

That $1700 was treated as the value of the land by both parties in this transaction, sufficiently appears by the evidence of the complainant, by the above admissions in the answer, and by the proof offered by one of the exhibits that the defendant's brother Edward, who acted as his agent in this matter, and was his security on the note to her for the price, or perhaps was the agent of both parties, took from her, at the close of the transaction, a receipt upon a deed given to her husband by his father for this lot, acknowledging the payment of $1700 for the transfer of the title. It is not a document that binds the defendant, but it is important as a memorandum at the time, of a transaction of which Edward had knowledge by hearing the bargaining between the parties.

The complainant swears positively to the representations of the defendant, as to both encumbrances. The defendant's answer admits that he insisted to her that the Stiles mortgage was an encumbrance on the land. Of the fact that he did so there can be no question. He justifies it in his answer and in his testimony, by a statement of the condition of .the estate of the testator in the hands of Jacob, as executor, alleging that Jacob, as executor, owed him $900, and that this debt absolved him in equity from his covenant to pay the Stiles mortgage, so that Jacob should have clear title to the sixteen acre lot. He says he apprised the complainant of these facts, and that he claimed that the mortgage was an encumbrance which she ought to discharge, on account of them. If this was so, it would be an answer to so much of the charges of the bill.

But these are facts set up by the defendant not in denial

of the fact upon which the fraud is based—the representation that the tract was subject to the mortgage—but in avoidance and justification of it. He must, therefore, prove this defence. The complainant denies, on her oath, that he made this representation to her. He, in his testimony, swears that he did. No other witness is offered to this fact.

It is not pretended that any accounts or statements of the estate was shown to complainant, showing this defalcation of her husband. He was a clergyman—a profession in which character for honesty and fair dealing is of consequence, and always claimed. His wife would scarcely forget such a charge, and, in narrow circumstances, as she was, would hardly have admitted a claim of $900 from the price of her land, upon the mere say so of John, or pay that claim by deducting it from the price of her lot, without taking some voucher or release to discharge her and her child from its being revived. The deed and written agreement of sale bind him to pay the mortgages, which she did not owe, and which he was already bound to pay by two agreements, but nothing is provided to release her from a claim to which she was bound as executrix of her husband; and it is not probable, if this negotiation was conducted, and the papers drawn under the direction of counsel of character, who had drawn one of the previous agreements, as is claimed by the defendant, that such counsel would have been satisfied with this superfluous agreement in the deed, and neglected the real matter settled. Beyond all question he would not, if his attention had then been drawn, as defendant testifies, to the previous arrangements, and to the reason alleged by defendant for claiming this as an encumbrance against the complainant.

The fact that Jacob had wrongfully appropriated the personal estate of the testator, to the amount of $1800, rests solely upon the evidence of the defendant. His answer as to this is not responsive. It is very difficult, in face of the agreement of February 23d, 1854, to believe this. That agreement fixes the mortgages which each son is to pay. Of a

debt of about $4000, the defendant agrees to pay two mortgages that are designated, one of $1200, the other being the mortgage in question of $800, $100 interest being due. It would have been more than the share of the defendant to have assumed the mortgage of $1200, and leave the $800 due on the Stiles mortgage to be paid by Jacob out of the $900 in his hands belonging to John, and, in the mean time, to let the lien of the mortgage rest on the lot of Jacob, who owed the debt.

The letters of John to Jacob, written in November and December, 1853, and in January, 1854, are entirely inconsistent with the fact of this indebtedness to him. He would not have apologized to Jacob for not being able to pay by driblets the overdue instalments for his purchase of the two lots, if he could have turned round to him and said, you owe me twice as much, from the assets in your hands.

It is impossible to believe from the evidence, that Jacob owed the defendant $900, or any such sum, as executor of his father. And if the proof was satisfactory that he insisted to the complainant that the Stiles mortgage was a lien as against her on that account, it would be no defence, as the fact represented is not proved to be true.

There is greater difficulty in the proof as to the mortgage to Mrs. Watkins; the only direct proof of the representation is the testimony of the complainant. The answer, in this respect responsive, fully denies it. It must, therefore, be overcome by stronger proof than the evidence of the complainant. The amount at which the property was valued shows that something besides the $700 mortgage to Stiles was deducted; that, with the $600 note, falls short of the price, $400, the sum complainant says was represented to her as the other encumbrance. It is the principal which would produce the annuity of $24. These are slight circumstances to support complainant's evidence.

Her strong confirmation is the agreement for sale and the deed given by her, both drawn by a lawyer of ability and integrity. By the agreement dated April 10th, 1856, she

agrees to convey the lot, subject to the *mortgages* thereon, not to the *mortgage*, which surely would have been the language, if it had first been discussed and settled that there was only the Winans mortgage. By the deed in fulfillment of this contract, dated on the 15th of April, all the encumbrances and liens existing at the death of Jacob are to be assumed and paid by the defendant, and the land is conveyed subject to the said encumbrances, twice repeated. This cannot be explained by the dower of the mother of Jacob; that could not be assumed or paid. The inference from this language is inevitable, that it must have been represented to the complainant and the conveyancer that there was more than one pecuniary lien on the premises. It supports her positive testimony, so as to compel belief against the answer and evidence of the defendant.

That the complainant, while higgling with the defendant between $500 and $600 as the price of the lot, should offer to sell it to others for $600 is natural, after she had been made to believe that there were encumbrances on it amounting to $1100.

The fact that her stepfather, who acted with her in the sale of this lot, was an attesting witness to her husband's signature to the agreement of February 23d, 1853, raises no presumption that he knew or recollected its contents. The agreement was sent to Jacob, at Washington, and was signed by him alone there. The formality of an attesting witness was required. Few subscribing witnesses ever hear the contents of the paper they attest; fewer still, notice or would recollect them at the end of a year.

As there is no proof of fraud in the purchase of this lot at the price of $1700, which was its value, and was fully understood by the complainant, the sale itself will not be set aside; but the fraud being in the non-payment of the price, on account of false representations, the defendant must be directed to account for and pay the part of the price so withheld. He must account for $1100, with lawful interest from April 15th, 1856.